<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

_____
                                        :
CHICAGO TITLE INSURANCE CO.,            :
                                        :
                   Plaintiff,           :
                                        :          Civil Action No. 08-3289 (JAG)
              v.                        :
                                        :                   **OPINION**
ANTHONY F. NATALE,                      :
                                        :
                   Defendant.           :
_____ :

<u>**GREENAWAY, JR., U.S.C.J.**</u>[1]

    This matter comes before this Court on a motion to dismiss the complaint of plaintiff

Chicago Title Insurance Company ("Chicago Title") for failure to join an indispensable party,

pursuant to FED. R. CIV. P. 12(b)(7), by defendant, Anthony F. Natale ("Natale").  For the reasons

set forth below, Defendant's motion shall be denied.

## I.  BACKGROUND

    Chicago Title brings professional negligence, negligent misrepresentation, and fraud

claims against Natale for his involvement as the closing agent on two properties which were later

discovered to be a part of a massive fraudulent scheme.  (Am. Compl. ¶¶ 5-7, 13, 28.)

### A.  195 Reynolds Street

    On March 25, 2005, a loan refinance transaction was closed for a property located at 195

_____

    [1] Sitting by designation on the District Court.

1

Reynolds Street, in Orange, New Jersey ("Reynolds St. Transaction").  (Id. ¶ 5.)  On that date, Greenpoint Mortgage Funding, Inc. ("Greenpoint") made two mortgage loans to Bartholomew O'Connor ("O'Connor"), the first for $174,400 and the other for $21,800.  (Id. ¶ 26.)  Natale represented O'Connor and Greenpoint on this transaction, as the settlement agent.  (Id. ¶ 28.)

On December 2, 2004, Natale placed an order for title insurance with Chicago Title.  (Id. ¶ 29.) Chicago Title issued a title commitment, closing service letter, and invoice to Natale.  (Id. ¶ 30.)  The title commitment required a signed closing statement to be provided prior to the issuance of the title policy.  (Id.)  O'Connor signed the closing documents.  (Id. ¶ 31.)  Chicago Title claims Natale had little, if any, contact with O'Connor and did not explain the meaning and import of the closing documents to him prior to his signing them.  (Id. ¶ 32.)

Natale signed a HUD-1 settlement closing statement,[2] in which he reported that O'Connor, as borrower, provided $21,000 in cash in connection with the refinance transaction. (Id. ¶¶ 33-34.)  After receiving the HUD-1, Chicago Title issued a title policy for 195 Reynolds Street in September of 2005.  (Id. ¶ 38.)

Chicago Title asserts that New Jersey Affordable Homes ("NJAH"), a company created by Wayne Puff ("W. Puff"), the "ringleader" of this fraudulent scheme, had provided the funds, not O'Connor.  (Id. ¶¶ 8, 35.)  Chicago Title alleges that Natale knew or should have known that NJAH, not O'Connor, provided the funds listed on the HUD-1.  (Id. ¶ 36.)

**B. 311 Summer Avenue**

Chicago Title alleges similar facts regarding the May 20, 2005 sale of a property, at 311

---

[2] A HUD-1 form (issued by U.S. Department of Housing and Urban Development) itemizes the charges imposed upon a borrower and seller for a real estate transaction.  It is available at http://www.hud.gov/offices/adm/hudclips/forms/files/1.pdf.

Summer Avenue, Newark, New Jersey  ("Summer Ave. Transaction"), to purchaser Raymond Reynolds ("Renolds").  (Id. ¶ 6.)  Greenpoint made mortgage loans to Reynolds in the amounts of $306,400 and $38,300.  (Id. ¶ 11.)  Natale represented both Reynolds and Greenpoint as the settlement agent for the transaction.  (Id. ¶ 13.)

As with the Reynolds St. Transaction, Natale sought title insurance from Chicago Title. (Id. ¶14.)  Reynolds signed the closing documents.  (Id. 16.)  Chicago Title alleges that Natale had not been present when Reynolds' signed the documents but falsely represented, to Chicago Title, that he had witnessed Reynolds' signature.  (Id. ¶¶ 18-19.)

Natale then submitted to Chicago Title a HUD-1 statement for this property, stating that Reynolds, as borrower, provided $54,268.63 in connection with the transaction.  (Id. ¶¶ 20-21.) However, as with the Reynolds St. Transaction, Chicago Title claims that Natale knew or should have known that Reynolds did not provide the money, but that, as it alleges, NJAH did.  (Id. ¶¶ 22-23.)

**C.  Damages**

Chicago Title claims that it would not have issued a title policy and insurance documents if it had known the true state of affairs regarding these properties.  (Id. ¶¶ 25, 39.)  It seeks, inter alia, compensatory damages in excess of $75,000 for the money it paid on title insurance claims asserted by Greenpoint in relation to the named transactions.  (See id. ¶¶ 40-41.)

**D.  Other Proceedings**

In September of 2005, the Securities and Exchange Commission ("SEC") initiated a lawsuit against NJAH and W. Puff in the District of New Jersey.  (See, e.g., Cert. of Anthony F. Natale, Jul. 9, 2009 ("Natale Cert."), Ex. A.)  Soon thereafter, Judge Jose Linares issued

injunctive orders restraining certain parties, such as creditors, from commencing any actions against NJAH and W. Puff while the case was pending.  (See id., Exs. A, B, C.)

The case before Judge Linares is currently administratively closed, subject to the right of the SEC to reinstate the case after the resolution of an ongoing bankruptcy matter involving NJAH and a criminal matter against W. Puff.  In an adversary proceeding in the bankruptcy court, NJAH (through its trustee) asserted malpractice, negligence, and fraud claims against Natale.  (See id., Ex. E ¶¶ 514-28, 563-78.)  NJAH and Natale have since settled the adversary proceeding.  (See Cert. of Michael R. O'Donnell, Jul. 17, 2009 ("O'Donnell Cert.") ¶ 3.)

**E.  Jurisdiction**

This Court has diversity jurisdiction over this matter, pursuant to 28 U.S.C. § 1332. There is complete diversity between Chicago Title, an Illinois company, and Natale, a New Jersey resident.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

## II.   STANDARD OF REVIEW

Motions to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(7), are based on a failure to join an indispensable party under Federal Rule of Civil Procedure 19.  See FED. R. CIV. P. 12(b)(7).

A Rule 19 analysis begins first with the inquiry of whether a party "should be joined if 'feasible' under Rule 19(a)," or, in other words, whether the party is "necessary."[3]  Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 404 (3d Cir. 1993).

---

[3]  The current iteration of Rule 19 does not use the word "necessary," but rather parties who should be joined if *feasible*.  "The term *necessary* in referring to a Rule 19(a) analysis harks back to an earlier version of Rule 19. . . . Rule 19(a) defines the parties who are 'necessary' in the sense that their joinder is compulsory 'if feasible.'"  Janney, 11 F.3d at 404. & n.4.

4

Rule 19(a) ("Persons Required to Be Joined if Feasible") states in material part:

A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1).

"If the party should be joined but joinder is not feasible . . . the court must then determine whether the absent party is 'indispensable' under Rule 19(b).  If the party is indispensable, the action [] cannot go forward."  Janney, 11 F.3d at 404.

Rule 19(b) provides four factors for consideration of whether a party is indispensable:

If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  The factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided . . . (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19(b).

Rule 19(a) and Rule 19(b) are sequential.  An affirmative finding under Rule 19(a) is a "necessary predicate to a district court's discretionary determination under Rule 19(b)."  Janney, 11 F.3d at 405.  Therefore, a court need not reach an inquiry of whether an action must be dismissed under Rule 19(b) if the absent party is not "necessary" under Rule 19(a).  Id.

## IV.  DISCUSSION

### A.  Rule 19

Natale argues that this suit should be dismissed because NJAH and W. Puff are

indispensable parties that cannot be joined, pursuant to injunctive orders issued in the district and

bankruptcy courts.

The first inquiry is whether NJAH and W. Puff are necessary parties under Rule 19(a).

The application of Rule 19(a) dictates a finding in favor of Chicago Title.

Two categories of circumstances are identified in Rule 19(a) for when a party's joinder is

compulsory if feasible.  The first category requires joinder when a court cannot accord complete

relief to the existing parties.  The second category mandates joinder on occasions where the

absent party "claims an interest" in the action such that the disposition of the action will either

"impair or impede the person's ability to protect that interest," or leave the existing parties

"subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations."

FED. R. CIV. P. 19(a)(2).

There can be no doubt that this Court is capable of providing Chicago Title with a full

remedy.  Chicago Title seeks, essentially, compensatory damages for the costs allegedly incurred

as a result of Natale's actions regarding to the Reynolds St. and Summer Ave. Transactions.

NJAH and W. Puff may have played a role in the fraudulent scheme in which Natale's actions

took place, but they have no part in the specific actions that underlie this suit — Natale's

negligence, fraud, and/or malpractice as the lawyer on those transactions.  Chicago Title does not

seek any remedies that can only be satisfied by NJAH or W. Puff.  Cf. Guthrie Clinic, Ltd. v.

Travelers Indem. Co. of Ill., 104 F. App'x 218, 221-22 (3d Cir. 2004) (holding court could not

6

provide complete relief because plaintiff sought relief regarding an insurance policy but did not name the party responsible for brokering the policy).  If Chicago Title were to prevail in this case, Natale would be the party responsible for damages stemming from his actions, not NJAH or W. Puff.  See Janney, 11 F.3d at 405 ("The effect a decision may have on the absent party is not material.").

There is also nothing to suggest that NJAH or W. Puff have an interest in this action, as required under the second category of analysis under Rule 19(a).  Under Rule 19, a party must have a legally protected interest, not merely a financial interest, in the action.  Liberty Mut. Ins. Co. v. Treesdale, 419 F.3d 216, 230 (3d Cir. 2005).  The standard for finding an interest is not low.  See, e.g., Hagan v. Rogers, 570 F.3d 146, 153 (3d Cir. 2009) ("Rule 20 permits the joinder of a person who has some interest in an action . . . even when that interest is not so strong as to require his joinder under Rule 19." (citation omitted)); Huber v. Taylor, 532 F.3d 237, 248-50 (3d Cir. 2008) (holding district court erred in finding absent party had "financial" and "professional" interest as a result of its joint liability to plaintiff); 7 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1609 (3d ed. 2001).

NJAH and W. Puff do not have even a semblence of an interest in this case.[4]  It does not touch upon any of the real estate and creditor issues before the bankruptcy court in the NJAH matter.  The causes of action asserted by Chicago Title are primarily about "tortious injury to the

---

[4] The Third Circuit has rejected the notion an absent party's interest in a case can be established by the notion that the disposition of the case will set a "persuasive precedent" for other pending litigation.  See Janney, 11 F.3d at 407 (rejecting persuasive precedent rationale as based in *stare decisis* and issue preclusion).

7

rights of another."[5]  McGrogan v. Till, 167 N.J. 414, 423 (2001) (discussing legal malpractice).

The only issue here is Natale's relationship with, and alleged injury to, Chicago Title.  NJAH's

and W. Puff's purported involvement in the greater fraud scheme is not implicated.

Moreover, there is no indication that any interest the parties may have will be impaired by

the resolution of this case.  Indeed, the fact that NJAH already settled essentially the same causes

of action against Natale suggests that is unlikely it has any outstanding or unresolved interest

regarding Natale's role on the real estate transactions.[6]

It is also not the case that NJAH or W. Puff have an interest that subjects Natale to a

substantial risk of incurring multiple or inconsistent obligations.  His obligations to Chicago

Title, as the settling agent on the Reynolds St. Transaction and Summer Ave. Transaction, are not

at issue anywhere else.  For instance, NJAH's claims against Natale (and other attorneys) solely

address Natale's obligations and duties to NJAH.  In fact, those claims involved properties

separate and apart from those involved here.  (See Natale Cert., Ex. E ¶¶ 157-498.)

Natale's premise that NJAH and W. Puff are necessary parties because he will otherwise

_____

[5]  In its Amended Complaint, Plaintiff added a third cause of action, for common law fraud.  It is based, however, entirely on the misrepresentations relied upon for its negligent misrepresentation count.  (See Am. Compl. ¶¶ 53-59.)

[6]  This Court finds no articulable reason that, as a result of this action, W. Puff's right to bring suit against Natale would be impaired.  Speculative concerns for issue preclusion are not sufficient bases for finding necessity under Rule 19(a).  See, e.g., Huber, 532 F.3d at 251.  Moreover, it is unlikely that issue preclusion would affect W. Puff, given that he has no relationship that would indicate privity between him and the parties here.  See id. at 250-51 (holding privity is a factual determination to be made in subsequent lawsuit, but finding nonetheless no privity—i.e., no virtual representation—by named defendant who was co-counsel with absent party in suit that underlied malpractice claims)); see also Collins v. E.I. DuPont de Nemours & Co., 34 F.3d 172, 176 (3d Cir. 1994) (explaining privity for issue preclusion generally requires that a party be a virtual representative of the non-party or that the non-party actually control the initial litigation).

be barred from seeking contribution and indemnification from them is mistaken.  This action does not preclude Natale from enforcing contribution, indemnification, or other claims, against NJAH and W. Puff.  The Third Circuit has made this clear:

> Though federal civil practice . . . permits a party defendant . . . to protect itself from potentially inconsistent verdicts by impleading the absent party under Federal Rule of Civil Procedure 14, it is not required to do so; and, if it does not, its right to bring a separate action for contribution or indemnity is unaffected. . . . 'A defendant's right to contribution or indemnity from an absent non-diverse party does not render that absentee indispensable pursuant to Rule 19.'

Janney, 11 F.3d at 412 (quoting Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs., 844 F.2d 1050, 1054 (3d Cir. 1988)).

While Natale may have some obstacles in asserting claims against NJAH and W. Puff because of the other ongoing proceedings, difficulty or delay in his ability to assert other claims he may have does not render Chicago Title's claims against him dismissible.  See Gardiner v. Virgin Islands Water & Power Auth., 145 F.3d 635, 642 (3d Cir. 1998) (holding that defendant was not necessary under Rule 19(a) because, although a "less convenient remedy," it could pursue its claims against absent party in a separate action).

Natale also contends that Rule 19(a) is satisfied because "the actions taken by [NJAH] and [W. Puff] . . . are intrinsic to the causes of action and are necessary . . . . [W. Puff] was the 'ringleader' of the fraudulent transactions . . . . Plaintiff should not be permitted to . . . skew the facts in an attempt to demote [NJAH and W. Puff] from indispensable parties to essentially unnecessary parties in order to proceed with this action against Mr. Natale only."  (Def.'s Br. at 9.)

Natale's attempt to equate Rule 19's "necessary parties" with "parties that are intrinsic to

9

the causes of action" is unpersuasive.  The import of Rule 19(a) is clear.  The plain text of Rule 19 and Third Circuit precedents require that, to be "necessary," a party must be more than just an important player in the same fraud scheme that has brought Defendant to this Court.[7]  See Dean Witter Reynolds, Inc. v. Druz, 71 F. App'x 941, 945 (3d Cir. 2003) (holding absent parties who were allegedly involved in fraud that led defendant to being sued were not necessary parties under Rule 19(a)).  Natale's swift legal conclusions to the contrary are meaningless.[8]

Because NJAH and W. Puff are not necessary parties, this Court need not reach whether they are indispensable parties under Rule 19(b).  Natale's motion to dismiss on the basis of failure to join indispensable parties is denied.

## B.  Bankruptcy Matter

Although Defendant has ostensibly based his motion on a failure to join an indispensable party, he also argues that Plaintiff's case is "not in accordance" with the bankruptcy court's case management order.

This argument is unfounded.  Judge Steckroth issued a case management order on November 16, 2006, "governing the conduct of discovery in all adversary proceedings filed in this case by [counsel for the Trustee of NJAH]."  (Natale Cert., Ex. H at Intro. ¶.)  Chicago Title is not

---

[7] Indeed, what Natale suggests makes a party "necessary" is more similar to that which the Federal Rules of Civil Procedure require for parties to be permissibly joined.  See FED. R. CIV. P. 20(a)(2)(B) ("Persons . . . may be joined in one action as defendants if: . . . any question of law or fact common to all defendants will arise in the action.").

[8] Defendant has also attached to his brief several orders, issued by the Superior Court of New Jersey, by which actions against Natale (and others) were dismissed without prejudice under N.J. Ct. R. 4:28 (Joinder of Parties).  (See Natale Cert., Ex. J. at 19-30.)  Defendant does not discuss these orders in his brief.  As this exhibit includes only orders, unaccompanied by the underlying complaint or written opinion, issued by a non-binding court applying local rules rather than the Federal Rules of Civil Procedure, this Court does not find them persuasive.

a party to any of the adversary proceedings.  Chicago Title is not bound to proceed according to

the case management order.[9]

## IV.  CONCLUSION

For the reasons stated above, Defendant's motion  for failure to join an indispensable

party, pursuant to FED. R. CIV. P. 12(b)(7), is denied.




 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.C.J.
(Sitting by designation on the District Court)


Date: March 15, 2010




---

[9] To be clear, this case is not impeded or barred by the injunctive orders—issued by Judge Linares in the SEC case against NJAH.

Judge Linares' September 26, 2005 order restrains "creditors and claimants" from taking "any action to interfere with the taking control, possession or management of the assets transferred to the Receiver [of NJAH]."  (Natale Cert., Ex. A ¶ IX.)  Chicago Title does not fall within the parameters of the defined term "creditors and claimants" in Judge Linares' order.

The October 5, 2005 order bars persons, defined as those who assert lien claims or interest in the assets of NJAH, from commencing an action against NJAH or "any of the Affiliated Entities, the Relatives and the Property Interest of any of the Investors."  (Id., Ex. B ¶¶ 2-3.)  As is true of the September 26, 2005 order, Chicago Title is not a "person" as defined in this order.  Moreover, there is no evidence that Natale is a party, i.e., an affiliated entity of NJAH, protected by this order.

The December, 5, 2005 order also does not preclude this suit.  It referred the case to bankruptcy court, and provided that, in large measure, the restraints of the October 5, 2005 order remain in place.  (Id., Ex. C.)